My name is Richard Seymour. I represent Maureen Hill. There are three main points I'd like to address in this argument. The first are some of the extraordinary facts that need to be looked at in the aggregate as opposed to being disaggregated. Second, I'd like to discuss the lower court's approach to resolving the case, and third, I'd like to address why the lower court did have jurisdiction over the questions involving Ms. Hills being fired by the Joint Chiefs. First, as to the unusual nature of the facts, it seems to us that the best window on what was taking place inside the Joint Staffs is provided by the May 1, 2006, notice of proposed 14-day suspension. Now, this was a document that was right on the heels of Ms. Hills having served a five-day suspension, and the document is at A1298 and A1299. The important thing is that one of the specific grounds for this proposed suspension was that Mr. Cain, her supervisor, found untrue the statements that she had made in her EEO complaint. That's at page A1299. Now, at page A1261, we have the memorandum for the record that Mr. Cain prepared stating that he had demanded that Ms. Hill provide to him the her description of the altercation that took place on February 22, 2006. Now, one of the difficulties in this case is there are a lot of allegations that are here. District Court sort of went one by one, I understand, and you have a problem with that. You said you ought to look at it in account of the total circumstance. Really, I guess what kind of intrigued me first about the case is this whole question of how the federal act and the handling of federal employees differ in these in terms of the whole business of the personnel action term, and whether you must show a materially adverse personnel action with regard to federal employees as opposed to non-federal employees. Is that not one of the central points here, or did I just overread that? Your Honor, what the standard for federal employees and for private employees both was taken below, and we believe correctly, to be the same standard as for private employees in Burlington Northern. What is unusual in the federal sector is that because federal sector claims involve a waiver of sovereign immunity, many courts have held that plaintiffs must make specific, discrete complaints with respect to everything that was not specifically exhausted. So, if I were representing a private sector plaintiff, there would be a retaliation claim that would cover the 300 days prior, if this is a state that had a local FEP law. In the federal sector, it's a referral. In a private employment situation out of these facts, it would never have gone to this little plaintiff. I'm sorry, Your Honor, did I hear the last part of your statement? If this was a private type action, if this was not the federal government, would it have gone, would we be looking at these kind of facts here? Your Honor, there are a lot of retaliation cases that I've come across in the course of my career. You have unusual situations involving the supervisors. I think that this is a very unusual supervision status that we had here. This individual, they had code words to describe her EEO complaints. They called it her ongoing activities. Mr. Cain testified that he became aware that that was what that meant just a couple of months after he came onto the job. You have the former supervisors no longer even employed in the same unit talking with him about the war and how they can best get this person out of the workplace. You don't tend to have that kind of conspiratorial activity among present and former supervisors elsewhere. What is the underlying act that formed the basis for the retaliation claim? A series of actions, Your Honor. There's a five-day suspension immediately after, four days after, Mr. Cain learned, this is from February 2006, four days after Mr. Cain learned that she had made an EEO complaint against him. Then we have the proposed 14-day suspension on May the 1st, 2006, based upon his complaint was false. Then we have a failure to adjudicate that complaint in the ordinary course. And departures from the ordinary course are usually considered evidence of discrimination. But a failure to adjudicate that for nine months while it's held over her head. Then it gets withdrawn and replaced with a substitute proposal for a 14-day suspension that does not have the telltale anymore about it being related to his disapproval of what she said in the EEO complaint. You have her being regarded as, or marked down as absent without leave on standards that in the district court's opinion four times are recognized to apply to no one else. You have Anita Happold, for example, who is not marked down as tardy, but she's routinely given 59 minutes and she coming out of here. Our contention is you have to look at the chain of events in order to see whether there's sufficient chilling activity to meet the standards of Burlington Northern. And when you put all of those together and string them along, it is massively chilling activity. Let me ask you this, Mr. Seymour. When she was, received her evaluation of unacceptable, many, there was a laundry list of problems that they had with her. Many of them went unrebutted. Now how can you say in the face of all these criticisms, in fact so many are unrebutted, that this action or this rating was given in retaliation? Your Honor, we believe that, well first, some of the allegations that the district court regarded as unrebutted were actually rebutted below. Some of the allegations that the defendant's own exhibit, and I've got at A580, declaration of Ms. McCatherin, who was involved in the audit. She says that the reason the thing did not proceed is there was a process. They will put something in, there's an EEO complaint. We don't know what that is, but there was something, and when this was holding fire, then she makes the complaint. She names Commander O'Rourke as one of the persons who's responsible. And then within a matter of days, they're told, let's push ahead on this. So there's a string of activity, it's like a string of dominoes. And what we have are a lot of facts that need to be resolved by the jury. There's a curious thing, Your Honor, looking at the district court decision. The court says again and again, four different times, that there are different standards that are applied, but the court doesn't deal with that as being evidence of discrimination or something wrong. You have the same individual making these decisions again and again and again. And the problem you have is sharp against Acre Plant Services. This is a case decided in 2013 by the Sixth Circuit, which held that where you have evidence of somebody with a bad motive, the documents that that person creates as to the individual's performance, as to the plaintiff's performance, should not be given weight on summary judgment. You've got to take that matter to trial. So too here. The approach in the federal government is, let's pay for these people, let's pay for these people. Now, I'd like to turn for a moment. Let me ask one factual question. I couldn't find the answer to this, but you know the record better than I do. Did Kane ever inform Hill, prior to rescinding the decision, that he considered her to be AWOL from October 9th, 2006 to December 15th, 2006? Did he ever tell her that before he rescinded it? Your Honor, I believe that he had, but if I can just consult with my co-counsel, who I've been in the case since January, so... My co-counsel informed me that he did inform her of that, but they can't, right now, give a citation for it. Maybe you can find it, if you can, Your Honor. If we can, Your Honor, we will pass it on. With respect to the district court's approach, the court said again and again, in its findings, that retaliation was very much in the forefront of Mr. Kane's mind. There's one expression that the court used, on page 39 of the Memorandum of Opinion, A, 1983. Explicit here and elsewhere is that Hill's EEO complaint remained in the forefront of Kane's thought. So we have a district court that has found both lawful and unlawful motives. But, and with respect to the finding of lawful motives, we think that a lot of facts were drawn, inferences were drawn. Hill's testimony was disregarded and Kane's testimony was credited, inappropriate for summary judgment. But put that aside for a moment. When a district court finds both lawful and unlawful motives, it has found a mixed motive situation. When it has done that, we submit it needs to address mixed motives analysis. It needs to put a burden on the government to show that it would have made the same decision in the absence of the improper motive. That was never done. But apart from that, even under a pretext McDonald-Douglas approach, the Supreme Court's decision yesterday in Burrage makes clear that but-for causation does not mean the only cause. It means it made a difference, but there can be also other things that are but-for causation. In other words, the example that Justice Scalia used is the straw that broke the camel's back. What we have in the district court's decision is not a determination that the legitimate reasons alone would have carried the day, the equivalent of a same decision analysis but with a plaintiff having the burden. The district court simply treated proof of some motive that the court regarded as legitimate, ending the discussion of a particular issue. And when you separate all of these issues, it looks like a pile of very small things. But it's just like taking rocks out of a stone wall. You take a look at a rock, say this is not enough for a stone wall. You take another rock away, this is not enough for a stone wall. It's when you put them together that you see the true structure that there was here. I would like to address just a couple of moments, Your Honor, on the question of timeliness. Before you leave that, I want to make sure I understand. Is it the reclassification that is the retaliatory act that you're primarily focusing on here? Not primarily, Your Honor, but the reclassification was one of the things that did set things off. And what we know about the timing of the reclassification is that although this started in February or March and started outside of Ms. Hill's work unit, it didn't get going. Nothing happened about it until Ms. Hill made the complaint and named Mr. O'Rourke as an alleged discriminating official and he found out about that. And then things got worse. Just as when Ms. Hill made an EEO complaint and named Mr. Cain as a defendant, things got worse. We know Commander O'Rourke was very upset by this. There's a statement in the record that it can damage the career of a military person to have a complaint like that made against him. He got together with Colonel Sneed, who was a second-level supervisor at the time, and told her that she should not have gone to EEO, she should have gone to J-1, the human relations part. What is the protected activity you say that Hill engaged in at least before the reclassification? Your Honor, the record does not make that clear. She made complaints, but the text of the complaints is not in the record. What was passed on by somebody that she spoke orally to, that is not in the record. All we know from the record is from Ms. McCather's testimony that as of July 2005, the matter of the reclassification of the position had been held up, and the actual formal audit had not been done. It's not in the record. What do we have to go on? Just that there was. The district court was correct in saying, at least from the record, there was no protected activity engaged in before the reclassification. It's not in the record. Except that the government's exhibit says that there was a pending EEO complaint. The next thing that we have is that – But a pending EEO complaint doesn't mean there's protected activity. Well, remember, protected activity is not just filing a formal complaint. It's opposition. But you can – I can't see anything – You can all the time file EEO complaints, and you don't have protected activity. That's why they don't succeed, right? I'll give you that, Your Honor, but just moving on very quickly, it is not until after she filed her EEO complaint through the EEO process in August 24th, something like that, of 2005, then the actual audit went forward. And it was not a normal audit because they held back the information that would have allowed her to keep her supervisory duties. I see my time is up. I cannot address the time, Dennis. You've got some time remaining in reply, so let's hear from Mr. Moskowitz. Yes, sir. May it please the Court, David Moskowitz on behalf of the Defendant Department of Defense. In this case, the District Court grants summary judgment in favor of DOD below correctly, and it did so on numerous grounds to deny plaintiff's claims, and there are still other grounds that the District Court didn't get to but are preserved in this appeal. Let me see if I can kind of understand how to put this in context of what has just been argued. It seems to me on the retaliation, the reclassification, that's just one of the things that he alleges and really can't really point a record to a protective activity, but there are a number of other things that they allege dealing with suspensions, and I take it that's the crux of the allegation of the retaliation claim. Well, I think they're trying to argue both things, and on the retaliation part related to the reclassification, I think you're hitting right on the exact point, which is that there is no evidence of any protected activity before the classification, and that's why the District Court correctly held that there was no causal link between any protected activity and the reclassification, and the timeline, I think, shows that exactly right, which is the audit began in February or March of 2005. By July of 2005, the audit had completed, and they had submitted a reclassified position description to the Washington Headquarters Service, which is the above branch that manages the joint staff, and then only after that, on August 9th, Ms. Hill was told that her supervisory duties were going to be removed, and on August 10th, according to her own complaint, she said that she was given a new list of standards based on removing her supervisory duties because this audit, which applied not just to her but to another individual, had showed that there weren't enough full-time permanent employees. So that deals with reclassification. Yes. Then you say none of the rest of them fit within this retaliatory claim because none of them is a federal personnel action affecting a material change in the terms, conditions, and benefits of employment, in other words, materially adverse. Well, I would only clarify that it's not none of them. The District Court rightly found that there were several specific actions that did qualify as personnel actions, and those were dismissed because of the legitimate nondiscriminatory reason provided by DOD that plaintiff failed to provide evidence of pretext that would be sufficient for a jury to find that it was merely pretextual reason. Just one more question on that, and that is because I couldn't quite get from the other side at least the argument I thought in terms of this whole business of personnel action and how that puts federal employees in a different situation. True or not? Yes. Congress, when they added the specific 2000E-16 and they added federal employees to be covered by Title VII, they specifically said that it was personnel actions that were to be free from discrimination based on the list of different items that you can bring a Title VII claim for. And Congress has over and over again used personnel action when it's covering federal employees, and that's a specific choice by Congress as to what rights can be brought in court. That's not to say that they have the rights here are different rights, right? So federal employees have substantial administrative rights and ways to challenge actions in the administrative process that nobody in the private sector would ever have, and this was a choice by Congress to limit the range of things that could be brought in court. I'm sorry, go ahead. I just, I wasn't sure from your, I thought I understood the law until you answered, and it's always a bad sign. How is the federal employee's rights different than an ordinary Title VII case? So the only difference You said some language, but what does that mean in the real world? Right, so this court has repeatedly interpreted personnel action to essentially mean something that affects the terms, conditions, and privileges of employment, and we believe that personnel action does mean that, and that's the only difference is that Does that have any significance in this case? Are there some of the claims that she made that would be good regular discrimination claims that are not because she's a federal employee? We think no, but it's in, and so the court can avoid reaching it, but at the same time some of the questions become slightly closer when you apply the materially adverse standard than applying the personnel action. Clearly these 17 actions are not personnel actions. Let me ask you this. One of the things that concerned me about the ruling was that there were several incidents alleged of retaliation that the district judge said as a matter of law were not materially adverse, specifically Kane's May 2006 proposal that he'll be suspended for 14 days. His rating of her is unacceptable, and he's placing her on the performance improvement plan as a result of that evaluation, and my question is how can we say as a matter of law that those are not materially adverse actions against an employee? Sure. Let me start with the proposed suspension, and I think the key here is to look at it in the context of federal employees and the rights that federal employees have, and a proposed suspension doesn't mean anything. It's a proposal. It goes to another deciding officer, entirely different, who's not at all But you don't think that would chill an employee's desire or interest in reporting further acts of believed discrimination? I don't think it rises to the seriousness level that the Supreme Court was, to the extent that the court would say materially adverse is the standard, that it rises to the level that the Supreme Court was looking for in Burlington Northern, and this is specifically decided in the D.C. Circuit where in the Bollock case where they said, and they went and looked through the court cases across the country, and they said the courts have refused to say something that is a proposed action of some type is sufficient, and this is especially so in federal context. You have somebody entirely different who's not related to this who's going to look at the claim and say on the merits, are these actions after Ms. Hill has an opportunity to defend herself, to provide all the evidence she wants, is this particular proposal sufficient to warrant a suspension? And so until that time when the document, until a suspension is actually implemented, we don't think it rises to the level of injury that the Supreme Court wanted to say something materially adverse. And you want to address the others as well? Sure. You want me to go over them with you again? I think you were talking about the rating and the performance. Yes, the rating of unacceptable and then putting her on a performance improvement plan as a result. And so in that, the case law that's out there has shown that, and this is in the Parsons case here in the Fourth Circuit that is an unpublished decision, that a negative performance evaluation is not sufficient alone to be something that would rise to the level of materially adverse. Of course, she's not alleging this alone. Right. But alone, and I think what the Court was talking about was alone, not in context with something tangible connected to it, such as a change in your position or an inability to get a promotion or some sort of salary issue. It has to be connected to something tangible. The unacceptable rating itself doesn't have any effect on her at the time. What do you mean it doesn't have any effect? You mean it doesn't affect her salary? It doesn't affect her salary. It doesn't affect anything related to her conditions of her job, what her responsibilities are. She maintains her job. And the whole purpose of the performance improvement plan is actually to get an individual in federal service who has received an unacceptable rating to get them forward to have an acceptable rating so that they continue their employment in federal service. And so the purpose of these is to actually bring the employee back to being a valuable contributor to the federal government, and it's not a punishment. Are you presuming the truth that there's a solid basis, in fact, for the action that's taken? Her position is, as the plaintiff, that these are retaliatory actions, that they're not grounded in fact. Well, ultimately, that's not, I don't think, relevant to the materially adverse or to the personnel action standard. That's an issue later on as to fighting on the merits of something of, you know. Yeah, but the reason I say that, it sounded to me like you were saying, well, this was justified. No, I'm trying to put in context why it's not materially adverse to a federal employee in any type of situation as to why it wouldn't likely dissuade them from moving forward with the complaint because it doesn't have any actual effects, and they're, in fact, given time. The whole point of the performance improvement plan is to see, in 90 days, can we figure out a way so that you get back to an acceptable level of performance? And that's the whole point of it. And so it doesn't, it would not dissuade a reasonable employee from bringing a charge. Now, I don't think that there's anything in any federal case law to support the idea that you would combine discrete events and combine them to make a single materially adverse event. And this is borne out by the Supreme Court's decision in National Railroad Passenger Corps v. Morgan where the Supreme Court made very clear that if you want to combine events, your claim created by Congress is a hostile work environment claim. And Burlington Northern is not a hostile work environment light claim. If you want to combine your events, you need to present it as a hostile work environment claim. And Ms. Hill is not even challenging the fact that there was no hostile work environment. And it's borne out by various other cases that whenever the Supreme Court, for example, in Burlington Northern examined the individual events in that case, they didn't examine them in context of each other, they examined them individually. Because the point is, what does each discrete act, would that discrete act cause the individual to be dissuaded from maintaining a charge? And part of the real problem here is that if you were to accept Plaintiff's argument, you'd say that an act that occurred on the day that it occurred is not materially adverse. But a year later, a bunch of other things happened. And now that prior act becomes materially adverse because other things in the future happened. It's not a judicially administrable standard. And that was Burlington Northern's whole idea, to create an objective standard and one that was administrably done by the judiciary to decide what acts are materially adverse and what aren't. And these are done on a discrete basis. Let me ask you a factual question again, something I didn't understand like I did your opponent. When Cain found the documentation that Ms. Hill provided for her absence in 2006, I think it was October to December, does the record reflect what was wrong with that documentation? I guess I'm not. He wanted documentation from her to explain why she was gone. I think maybe it was a health reason or something. I've forgotten exactly what it was. But he found the documentation she submitted unacceptable. But I never understood why it was unacceptable. So I'm not sure exactly, since there's a number of different things. So in the March. This was from October to December of 2006 when she was out. Right. I don't, I think that there was confusion as to what the right category was because she didn't have any leave available. And so the question is, really, does she get absence without leave or does she get leave without pay? And there wasn't any consequences or anything for being listed as absent without leave. It's only in the timekeeping. It wasn't a charge of absence without leave or any suspension or any type of disciplinary action related to it. And so I believe it was in the timecard as absence without leave until she provided documentation. Then she provided it. He conferred with Washington Headquarters Service on the correct way to list this. And after consultation with Washington Headquarters Service, he listed it in the timecard as leave without pay. Okay. And we'll switch gears on you now. Sure. Do you think we should consider, in evaluating a claim like hers, the cumulative effect of the alleged retaliatory conduct? No. In terms of whether something is materially adverse or not? I mean, because that's the only, that's the way the argument is being presented is that something is materially adverse based on accumulation of things. And there's nothing to suggest that, you know, when the Supreme Court says in Burlington Northern not allowing someone to go to lunch with the supervisor is a trivial thing. There's nothing that suggests, well, if you didn't allow them to go to lunch on five different occasions over three years, that that somehow alters the analysis. And it's, you know, a standard that can't be administered. How do you add up different acts to say, well, these plus this plus this plus this plus this over, in totally different contexts and totally different time periods, somehow add up to make one single materially adverse standard? The point is that if you want to add up a whole bunch of things, you bring a hostile work environment claim and you say that the terms and conditions of my employment have changed based on this entire string of conduct that is related to each other. And, you know, by that you don't say materially adverse somehow lowered the standard for hostile work environment claim. So are you saying that there are like stages that you would go through? That if you're suffering adverse action, retaliatory, if it gets to a certain point, then you've established a hostile work environment? That you have to know where that point is? I may be confusing both of us. The Fourth Circuit's case law has established that you can bring a retaliatory claim for hostile work environment. But the standard is as the same as a hostile work environment in discrimination based on status context, that, yes, at some point in time when it is so perverse and severe that it affects the terms and conditions of your employment, then you have a hostile work environment claim. That's not to say that you then get to also go add up a bunch of things to try to say, and now I have one materially adverse event or five things that are equal to one materially adverse event. It has to be the individual discrete action. Well, a hostile work environment claim is not made here, correct? It was brought below, the district judge dismissed it, and they're not appealing it. So all we have is a claim of some materially adverse employment action. Correct. I'm happy to address any of your questions on any particular issues that you care about. We care about all issues. But if you said what you have to say, that's fine, too. I think the district judge, just to close, on the four actions that he found were materially adverse, because he did apply that materially adverse standard and he did apply it correctly, the four actions that he did find that the government presented legitimate nondiscriminatory reasons for the actions, they're clear from the record and it's based on undisputed facts. With respect to the five-day suspension, the undisputed facts that were found by Major General Custer, someone who has nothing at all to do with the actions in this case. He is a vice director of the Joint Chiefs of Staff. He found that Ms. Hill had failed to follow the clear directions from Mr. Cain in his e-mail, and there's no dispute that she, in fact, did not personally prepare the response that she was requested to do, and that she did not send that response for his review prior to having it sent to the office STRATCOM. The same is true on all the other counts. You know, we've gone through a lot of detail on these facts and if you have questions on them, I'm happy to address, but I won't, you know, repeat what we've said in our briefs. Thank you. Thank you. Mr. Seymour, reply? I would like to have at least two minutes on timeliness at the end, but I have to address some of the things that were just said. If the government's argument were accepted by this court, then that means that federal employers inside the Fourth Circuit could take every individual who made an EEO complaint and issue a proposed suspension, issue a performance improvement plan, issue unacceptable ratings, and keep them going. And there's nothing that any court could do about it, even if the workplace is terrorized and people don't dare make an EEO complaint. That's just not an acceptable result and that tells us it's not an acceptable argument. In Burlington Northern itself, the plaintiff suffered, I believe, it was a 33 and perhaps a 34-day suspension and it was ultimately rescinded and she was given back pay for it and the Supreme Court held that that was sufficient to be chilling. The conduct here was clearly sufficient to be chilling. Ms. Hill did not face discrete events unconnected from another. We have in the words of Mr. Cain, who's responsible for most of this, that it was a war, that they were gaming the way to get her out of the workplace, that they saw these as stepping stones on the way to get her out of the workplace. A stone wall is a stone wall. Now, it is true that many courts have recognized a cause of action for a retaliatory harassment. The claim of harassment below was a claim of harassment based on race and sex and that was not strong and appeal was not taken. But I'm not aware of any decision of any court of appeals that has ever accepted the notion that a plaintiff cannot call a court's attention to the entire context of activity without making a claim specifically framed as retaliatory harassment. That's not what the Supreme Court was holding in the Amtrak case against Morgan. The timeliness. The key here is that on October 15, 2008, when an appeal was taken from the Adverse Personnel Action of Termination to the Merit Systems Protection Board, all counsel were receiving service by mail. That's in conformity with the MSPB regulation requiring multiple representatives for the same party to choose the same method of service. A couple of months later, Catherine Atkinson registered as an e-filer. That did not change the prevailing registration by mail of Mr. Gilbert, who was the lead counsel in the case and who originally filed earlier for mail service. And her registration as an e-filer is not a registration by Hill, as the government asserts in its brief. It was her personal registration as an e-filer. If you apply strictly the MSPB regulation, which is 5 CFR 1201.14 E3, then her registration was not valid. There's no provision in the regulations for breaking a tie, even if they filed simultaneously. One is e-filed, one is mail. That's in violation of the regulation, but there's nothing that says that the e-filing trumps the mail filing. The MSPB, in the course of all proceedings in this case, treated both individuals as having filed. Now, when the actual MSPB decision came out, we know from a document that the government filed in the case that, and the record, this is pages A857 and A858, which is petitioner's reply to the EEOC to the government's challenge to the timeliness of seeking review before the EEOC. And it quotes the, on page A858, it quotes the agency staying, saying that it knew the petitioner's representative, Catherine Davis, was out of the office and on maternity leave at the time of service. Now, she'd actually resigned, but they knew she wasn't there to receive it. And if the agency and the attorney know she's not there to receive it, another reason why the district court really had jurisdiction, there was no problem of untimeliness. But it goes further. The EEOC has the power to review the decisions of the MSPB. And its own regulations state that it makes a preliminary determination, and this is 29 CFR 1614.305. Subparagraphs A and B say they make a preliminary determination whether this is a matter to be heard. They did not address the question of timeliness in their decision, but under the regulations they have to have made a preliminary determination that this was timely in order to be able to proceed with it. So you want the benefit of the regulations in one case, but you don't want to apply the regulations in another. Is that right? No, Your Honor. I think the regulations for both the MSPB and the EEOC help us. And the important thing here is that the government is seeking a novel result because there is no rule or regulation with respect to tiebreaking. The MSPB has never addressed it, EEOC has never addressed it, and no Article III court has ever addressed it. So it's completely a novel issue before this court. Thank you. Thank you, Your Honor.
judges: William B. Traxler, Jr., Diana Gribbon Motz, James A. Wynn, Jr.